John C. HENDRICKS, Plaintiff,
v.
EASTMAN KODAK COMPANY, a corporation, et al., Defendants.

Civ. No. 18951.

United States District Court
S. D. California, Central Division.

Dec. 18, 1956.

Jerome Weber and Reuben Rosensweig, Los Angeles, Cal., for plaintiff.

McCutchen, Black, Harnagel & Greene, George Harnagel, Jr., Philip K. Verleger, Los Angeles, Cal., for defendant Eastman Kodak Co.

TOLIN, District Judge.

Diversity of citizenship is the sole jurisdictional basis for prosecution of this replevin action in this Federal Court.

Plaintiff purchased certain unexposed motion picture film from defendant Eastman Kodak Company. The cost of having the color film developed was included in the purchase price and in due course plaintiff delivered the film to defendant Eastman Kodak Company for processing. The film in question is part of a larger footage intended to be used in preparation of a motion picture story. When the particular portion involved in suit had been processed, defendant delivered 400 feet of it to plaintiff and, on no authority beyond its own decision, refused to deliver the remaining 1,000 feet.

On earlier occasions other portions of the prospective total cinema production had been processed and thereafter returned to plaintiff by Eastman. They are not in dispute here.

The refusal to re-deliver the film was stated by defendant to be justified because to deliver it would violate a section of the California Penal Code [1] which prohibits certain *wilful* use of specified obscene or indecent material.

It was also contended that certain ordinances of the City of Los Angeles [2] would be violated by delivery of the film to said defendant's customer, the plaintiff herein.

The claim that delivery of the film to its producer would violate the statute or ordinances was specifically pleaded and, in addition, a general morality statute was pleaded as a special defense. [3]

---

1. § 311. "Lewd or obscene conduct; indecent exposure; obscene writings, publications, pictures, etc.; *obscene songs* and reproductions thereof; punishment; application to actors.

"Every person who wilfully and lewdly, either:

\*     \*     \*     \*     \*

"3. Writes, composes, stereotypes, prints, publishes, sells, distributes, keeps for sale, or exhibits any obscene *or indecent* writing, paper, or book; or designs, copies, draws, engraves, paints, or otherwise prepares any obscene or indecent picture *or print; or* molds, cuts, casts, or otherwise makes any obscene or indecent figure; or,

" \*  \*  \* is guilty of a misdemeanor."

2. Sec. 4102(a) of the Los Angeles Municipal Code:

"No person, either as owner, manager, producer director, actor or agent, or who acts in any other capacity, shall give, direct, present or participate in any obscene, indecent, immoral, or impure drama, play, exhibition, show, or entertainment, or any obscene, indecent, immoral, impure scene, tableau, incident, part or portion of any drama, play, exhibition, show, or entertainment, which tends to corrupt the morals of youth or others, or which depicts or deals with the subject or theme of sex degeneracy or sex perversion, or sex inversion."

Sec. 4101 (as amended by Ordinance No. 92,884) of the Los Angeles Municipal Code:

"(a) No person shall write, compose, stereotype, print, publish, sell, keep for sale, distribute, or make, photograph, design, copy, draw, engrave, paint or otherwise prepare *any obscene or indecent bill,* poster, engraving, photograph or drawing.

"(b) No person shall write, compose, stereotype, print, publish, sell, keep for sale or exhibition, exhibit or distribute any obscene or indecent print, picture, bill, poster, engraving, photograph or drawing.

"(c) No person shall sell, distribute, give away, possess for sale or exhibition, mold, cut, cast or otherwise make or prepare any obscene or indecent cast, statue or image.

"(d) No person shall manufacture, cut records of, transcribe or otherwise prepare, or sell, or keep for sale or exhibition, play or play back, any obscene or lewd phonograph record, electrical transcription, wire recording, or other device for the recording of sight or sound.

"(e) No person shall wilfully be, or remain present, at any place where, or time when any obscene or lewd phonograph record, electrical transcription, wire recording or other device for the recording of sight or sound is being played or can be heard."

3. Sec. 1667, California Civil Code:
"Unlawfulness defined
"What is unlawful. That is not lawful which is:
"1. Contrary *to an express provision* of law;
"2. Contrary to the policy of express law, though not expressly prohibited. or,
"3. Otherwise *contrary to good morals.* (Enacted 1872.)"

The case was tried to a jury. Defendant demanded the jury as of right. Plaintiff insists it was but an advisory jury.

■■ This is an action for the recovery of personal property. The complaint is labeled "replevin" and the relief sought is that of the old common law remedy of replevin which, of course, is an action at law. It is fundamental that in actions in law, the Seventh Amendment to the Constitution guarantees the right to a jury trial. The jury is the trier of the facts and its verdict in an action in law is not purely advisory, but determines the facts for all purposes of the case.

The jury returned a special verdict in which it found that the film was lewd, obscene, indecent, lascivious and immoral; that it depicts immoral, indecent, lewd and lascivious acts and suggestions; that it delineates material in such a manner as to offend public morals and decency; and that the exhibition of said film is contrary to good morals.

The jury consisted entirely of adults and found that the morals of its own age group would not be endangered by the picture. It is common for many persons to believe that others of their class are immune to immoral suggestion, but that those in a younger age group are susceptible to it. It is not necessary to here determine whether the jury's fear that "youth" would be more readily endangered than adults, was justified.

The use and language of interrogatories in a special verdict were agreed to by the litigants and the Court was not asked to submit other questions to the jury.

The Court therefore accepts the jurors' verdict as authoritative findings of fact in the particular areas submitted to it.

The film, which ran about fifteen minutes, depicted various young female dancers performing the burlesque type of dance commonly referred to as the "bumps and grinds."

■ Defendant asserts that if it were to deliver the film it would be liable as an aider or abettor of plaintiff in plaintiff's violation of the statute and ordinances referred to herein. Defendant also asserts that a separate defense exists in that there is no right to recover possession of goods which are to be used for an illegal purpose. As plaintiff's claim does not rest upon an illegal contract or transaction but is a pure replevin action, this latter defense is not valid here.[4]

■ However, there is no evidence that the film, or any part of it, was to be used for an illegal purpose. Plaintiff was in an enterprise of manufacturing a motion picture story. It was his intent to use, or to consider using, some of the film which defendant took upon itself to censor. That film had not yet reached the editing stage. For aught that would appear from the record here, all of it would be rejected from inclusion in plaintiff's cinema which he intended to compile, using not only the 1,400 feet delivered to defendant for processing on this occasion but a considerably larger quantity which had been printed for him by defendant upon an earlier occasion. This was a transaction between the manufacturer of a motion picture story and the developer and printer who prepared all of the portions to be included in the final film, as well as the portions to be ultimately rejected in the process of manufacture.

In view of the incomplete, unedited state of this unfinished material, it is impossible to determine whether the finished product would have an immoral character. Hence, the element of wilfulness which would be a required element of the offense defendant seeks to avoid aiding, would have been absent. The familiar rule in Postal cases that

4. California Grape Control Board v. Boothe Fruit Co., 1934, 220 Cal. 279, 29 P.2d 857; Franklin v. Mortgage Guaranty & Security Co., 9 Cir., 1932, 57 F. 2d 834.

a film must be judged from what appears from the examination of the complete picture alone, cannot be applied here, for the boundaries of the completed film have not been determined.

Censorship of motion pictures has not been committed by law to those who develop and print film for the photographers and editors of the film. Even if this were so, this act of censorship would be premature. The complete picture which will be displayed upon completion of manufacture, had not come into being; and if some part of the presently existing unedited material is such that it would be unlawful to exhibit it, the Court cannot now presume that plaintiff will act illegally in his selection and rejection of scenes for the complete cinema play.

Counsel for plaintiff may submit a judgment in favor of plaintiff, but without allowance of any damages.[5]

5. Damages have been waived.